## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JESSIE MILTON, on behalf of themselves and others similarly situated,<br><br><br>Plaintiff,<br><br>v.<br><br><br>USA HOME IMPROVEMENT LLC,<br><br><br>Defendant. | Case No.: 1:26-cv-22028-KMW<br><br><br>FIRST AMENDED<br>CLASS ACTION COMPLAINT<br><br><u>JURY TRIAL DEMANDED</u> |

**Nature of this Action**

1.      Jessie Milton ("Plaintiff") brings this class action against USA Home Improvement LLC ("Defendant").

2.      This class action arises from Defendant's persistent disregard for federal law—specifically, the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

3.      Defendant's unlawful and invasive telemarketing tactics to drum up business. And Defendant flooded Plaintiff with invasive telemarketing solicitations in clear violation of the TCPA.

4.      Now, Plaintiff brings this class action on behalf of himself, and all others harassed by Defendant and their unlawful telemarketing tactics.

5.      Mr. Milton brings this action to enforce the consumer-privacy provisions of the TCPA alleging that USA Home Improvement LLC made telemarketing calls to telephone numbers listed on the National Do Not Call Registry and, upon information and belief, used an automated system, and that by doing so, Defendant has violated the provisions of the Florida Telephone Solicitations Act, Fla. Sta § 501.059.

**Parties**

6.      Plaintiff is a natural person in this District, where he intends to remain.

7.      Defendant is a limited liability company based in Florida.

**Jurisdiction and Venue**

8.      This Court has subject matter jurisdiction under 47 U.S.C. § 227(b)(3) and 28 U.S.C. § 1331.

9.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b) as a substantial portion of the events giving rise to this action occurred in this district.

10.     Defendant directed phone calls to Plaintiff's residential in this district.

**Background**

11.     Congress enacted the Telephone Consumer Protection Act ("TCPA") to combat "the proliferation of intrusive, nuisance calls to consumers and businesses from telemarketers." *Facebook, Inc. v. Duguid*, 592 U.S. 395, 399 (2021) (internal quotation omitted).

12.     "The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number…This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who,

2

despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

13.   As used herein, "TCPA" refers to both the federal statute 47 U.S.C. § 227 *et seq.* and its implementing regulations 47 C.F.R. § 64.1200 *et seq.*

14.   The TCPA establishes a "private right of action" whereby persons can seek both injunctive and monetary relief. 47 U.S.C. §§ 227(c)(5).

15.   For damages, the TCPA provides "$500 in damages for each such violation[.]" 47 U.S.C. §§ 227(c)(5). However, the TCPA provides treble damages of $1,500 for each "willful" or "knowing" violation. *Id*.

16.   Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to a person." 47 C.F.R. § 64.1200(f)(13).

17.   The term "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services[.]" 47 C.F.R. § 64.1200(f)(15).

18.   The FTSA, Fla. Stat. § 501.059 was amended by Senate Bill No. 1120 on July 1, 2021.

19.   It is a violation of the FTSA to "make or cause to be made any unsolicited telephonic sales call to any residential, mobile, or telephonic paging device telephone number if the number for that telephone" is on the National Do Not Call Registry. *See* Fla. Stat. § 501.059(4).

20.   A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will

or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

21.     Pursuant to § 501.059(10)(a) of the FTSA, damages are available at a minimum of $500.00 for each violation.

## Factual Allegations

22.     Plaintiff is, and at all times relevant was, the subscriber and customary user of the residential telephone number (786) 486-XXXX.

23.     Plaintiff resides in Opa-Locka, Florida, and uses that number for personal, residential, and household purposes.

24.     Plaintiff's residential number has been registered on the National Do Not Call Registry since October 16, 2009, and has remained continuously listed since that time.

25.     Plaintiff personally registered his telephone number on the National Do Not Call Registry

26.     Plaintiff has been the sole and regular user of the residential for approximately ten years.

27.     This is Plaintiff's personal number.

28.     Plaintiff uses his cellular telephone as his primary residential line.

29.     Plaintiff does not have any other telephone numbers.

30.     Plaintiff's residential number is not associated with any business, and Plaintiff does not use the number for any commercial or business purpose.

31.     Plaintiff did not use it his cellular telephone number for business purposes in the past, and does not use it for business purposes now. Indeed, Plaintiff has never received

reimbursement from any business for the use of this number, and has never taken any tax deductions for any business-related uses of this number.

32. Plaintiff has never been a customer of Defendant, USA Home Improvement LLC, and has never provided Defendant with his residential number.

33. Beginning in or around September 2025, Defendant initiated telephonic communications to Plaintiff's residential number in an effort to solicit Plaintiff to purchase Defendant's goods and services, specifically hurricane windows and doors.

34. The Defendant made several marketing calls throughout the fall of 2025.

35. These communications were unsolicited and were not made in response to any inquiry by Plaintiff, as Plaintiff never requested information from Defendant.

36. On January 28, 2026, Defendant placed a call to Plaintiff's residential number.

37. Plaintiff answered the call and spoke with an individual who identified herself as "Maria" from USA Home Improvement LLC.

38. During this call, Defendant attempted to solicit Plaintiff to purchase hurricane windows and doors by providing quotes and promotional information regarding Defendant's services.

39. On January 31, 2026, Plaintiff sent a written Demand Letter to Defendant, explicitly notifying Defendant that its communications were unsolicited and made without Plaintiff's consent, and informing Defendant of its obligations under the TCPA.

40. Defendant received the Demand Letter via certified mail on February 2, 2026.

41. Despite receiving actual notice that Plaintiff did not consent to further communications, Defendant continued its unlawful conduct.

42.     On February 4, 2026, Defendant placed another call to Plaintiff's residential number.

43.     The call was another unsolicited telemarketing call made after Defendant had been expressly notified to cease such communications.

44.     In addition, Plaintiff received text messages from the Defendant.

45.     One of those text messages is below:



46.     The content and sequence of Defendant's communications—including text messages referencing services and follow-up calls providing quotes—demonstrate a unified telemarketing campaign.

47.     Plaintiff does not assert that the text messages independently violate the TCPA. Rather, the text messages are alleged as evidence demonstrating that Defendant's subsequent telephone calls were made for the purpose of encouraging the purchase of goods or services and were therefore telemarketing solicitations.

48.     The aforementioned calls and messages were made for the purpose of advertising and promoting Defendant's goods and services.

49.     Defendant's telephonic communications to Plaintiff were unwanted, nonconsensual, and constituted an invasion of Plaintiff's privacy.

50.     The calls were placed by Defendant as part of a coordinated telemarketing campaign using equipment that dialed telephone numbers from a stored list of leads.

51.     Defendant utilized dialing equipment that automatically selected and dialed telephone numbers without human intervention, as part of a high-volume telemarketing campaign.

52.     Plaintiff did not provide his consent for these calls.

53.     Plaintiff does not know how the Defendant came into position of his telephone number, but he did not provide it to them.

54.     Defendant's initial outreach referenced a supposed inquiry that Plaintiff never made, confirming that Defendant relied on inaccurate or third-party lead data rather than any request from Plaintiff.

55.     Upon information and belief, Defendant utilized equipment that dialed telephone numbers from a stored list of leads in a systematic and automated manner. The repeated calls from

the same telephone number and the uniform nature of the solicitations demonstrate that the calls were part of a structured telemarketing campaign, rather than individually dialed calls.

56. The calls Plaintiff received from Defendant originated from the same telephone number, indicating that they were part of a single, coordinated telemarketing campaign conducted by or on behalf of Defendant.

57. As a result of Defendant's actions, Plaintiff suffered actual harm, including but not limited to nuisance, annoyance, invasion of privacy, and disruption of daily life.

### Class Action Allegations

58. Plaintiff brings this action under Federal Rule of Civil Procedure 23, and as a representative of the following classes:

**National DNC Class:** All persons throughout the United States (1) who did not provide their telephone number to USA Home Improvement LLC, (2) to whom USA Home Improvement LLC delivered, or caused to be delivered, more than one voice message within a 12-month period, promoting USA Home Improvement LLC goods or services, (3) where the person's residential or residential number had been registered with the National Do Not Call Registry for at least thirty days before USA Home Improvement LLC delivered, or caused to be delivered, at least two of the voice messages within the 12-month period, (4) within four years preceding the date of this complaint and through the date of class certification.

**FTSA Autodialer Class:** All persons in the State of Florida who, during the period beginning four years prior to the filing of the Complaint, and through the date of class certification, (1) received a telephone call (2) from Defendant or on their behalf (3) regarding Defendant's property, goods, and/or services (4) that was sent using the same equipment or type of equipment used to call Plaintiff, (5) and from whom Defendant do not possess evidence of prior express written consent to such calls.

**FTSA DNC Class:** All persons in the State of Florida who, during the period beginning four years prior to the filing of the Complaint, and through the date of class certification, (1) received a telephone call (2) from Defendant or on their behalf (3) regarding Defendant's property, goods, and/or services (4) after they were listed on the National Do Not Call Registry.

59. Plaintiff reserves the right to expand or narrow the Class definitions following discovery.

60. Excluded from the Class are Defendant and their officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

61. *Numerosity*. The members of the Class are so numerous that individual joinder is impracticable. Although the exact number of Class members is unknown, Plaintiff alleges upon information and belief that each Class includes at least 40 members based on the nature and objective of telemarketing campaigns, which are designed to reach a large volume of potential customers (called "leads" in the industry), in order to convert a small percentage of those leads into actual customers to ultimately drive increased sales to the companies that engage in telemarketing. Class members are ascertainable through objective criteria, such as Defendant's call records, which Defendant maintain, allowing identification through discovery.

62. ***Common questions of law and fact predominate.*** There are numerous questions of law and fact that are common to the Class that predominate over any questions affecting only individual members of the Class, which will produce common answers that will drive resolution of the litigation, and they include, but are not limited to, the following:

- Whether Defendant used an automated system for the selection and dialing of telephone numbers within the meaning of the FTSA to initiate the telephone solicitations at issue;

- Whether Defendant's solicitations introduced an advertisement;

- Whether Defendant's solicitations constitute "telephone solicitations" and/or "telemarketing" under the TCPA;

- Whether Defendant's solicitations constitute "telephonic sales calls" under the FTSA;

- Whether Defendant's conduct was knowing and/or willful;

- Whether Plaintiff and the Class are entitled to statutory damages and/or liquidated damages and the amount of such damages; and

- Whether Defendant should be enjoined from further violations of law as alleged herein.

63.    Plaintiff's claims are typical of the Class members' claims under Fed. R. Civ. P. 23(a)(3) because they arise from the same course of conduct by Defendant and are based on the same legal theories. Plaintiff and Class members suffered similar harms, and Plaintiff is not subject to unique defenses.

64.    ***Adequacy of representation***. Plaintiff will fairly and adequately protect the Class's interests under Fed. R. Civ. P. 23(a)(4). Plaintiff has retained counsel experienced in complex consumer class actions and TCPA litigation and intends to vigorously prosecute this action. Plaintiff has no interests antagonistic to the Class.

65.    ***Superiority***. A class action is superior to other methods for fairly and efficiently adjudicating this controversy under Fed. R. Civ. P. 23(b)(3). Individual litigation is economically infeasible due to the high costs relative to individual, making separate lawsuits impractical. Class treatment avoids burdening the court system with numerous individual cases and prevents inconsistent rulings or standards for Defendant. For example, one court might enjoin Defendant's conduct while another might not, creating conflicting obligations. Class members are unlikely to pursue individual claims due to the modest damages relative to litigation costs.

10

66.     In addition to satisfying the prerequisites of Fed. R. Civ. P. 23(a), Plaintiff satisfies the requirements for maintaining a class action under Fed. R. Civ. P. 23(b) because:

- The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

- Defendant has acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

- Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

**Count I**
**Violations of the TCPA, 47 U.S.C. § 227**
**(On Behalf of Plaintiff and the National DNC Class)**

67.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-52.

68.     It is a violation of the TCPA to initiate any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do Not Call Registry. 47 C.F.R. 64.1200(c)(2).

69.     Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf violated the TCPA by causing multiple telephone solicitation calls to be initiated to Plaintiff Milton and members of the National DNC Class in a 12-month period, despite the person's registration of his or her telephone numbers on the National Do Not Call Registry.

70.     As a result of Defendant's violations of 47 U.S.C. § 227(c)(5), Plaintiff and the members of the class are entitled to damages in an amount to be proven at trial.

**COUNT II**
**Violation of the FTSA, Fla. Stat. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Autodialer Class)**

71.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-52.

72.     The FTSA prohibits a person from "mak[ing] or knowingly allow[ing] to be made an unsolicited telephonic sales call if such call involves an automated system for the selection and dialing of telephone numbers…without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

73.     As alleged herein, Defendant made or knowingly allowed to be made unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers.

74.     Defendant's telephone solicitations to Plaintiff and the Class constitute "telephonic sales calls" under the FTSA because they were initiated "for the purpose of soliciting a sale of any consumer goods or services." Fla. Stat. § 501.059(1)(j).

75.     As Defendant's telephone solicitations to Plaintiff and the Class constitute "unsolicited telephonic sales calls" under the FTSA because they were not made (i) in response to

an express request of the person called; or (ii) to a person with whom the telephone solicitor has a prior or existing business relationship. Fla. Stat. § 501.059(1)(k).

76.     Defendant did not obtain "prior express written consent" to place unsolicited telephonic sales calls to Plaintiff and the Class using an automated system for the selection and dialing of telephone numbers, as required by Section 501.059(8)(a).

77.     Defendant initiated the telephonic sales calls at issue to Plaintiff and the Class members who were located in Florida.

78.     Thus, Defendant's unsolicited telephonic sales calls to Plaintiff and the Class violated the Section 501.059(8)(a) of the FTSA.

79.     Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

80.     Plaintiff and the Class are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

81.     Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendant placed in violation of the FTSA. See Fla. Stat. § 501.059(10)(a)(2).

82.     Because Defendant knew or should have known that they were using an automated system for the selection and dialing of telephone numbers to place unsolicited telephonic sales calls to Plaintiff and the Class without prior express written consent, Defendant's violations of the FTSA were willful or knowing.

83.     Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

84.     Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

**COUNT III**
**Violations of the FTSA, Fla. Stat. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA DNC Class)**

85.     Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1-52.

86.     Defendant is, and at all times relevant were, each a person and/or a "telephone solicitor" as defined by Fla. Stat. § 501.059(1)(i).

87.     Defendant initiated outbound telephone solicitations to Plaintiff and the Class.

88.     Plaintiff and the Class members communicated to Defendant that they do not wish to receive outbound telephone solicitations made by or on behalf of Defendant by being registered on the National Do Not Call Registry.

89.     Defendant continued to initiate outbound telephone solicitations to Plaintiff and the Class despite being on the National Do Not Call Registry.

90.     Defendant initiated the telephonic sales calls at issue to Plaintiff and the Class members who were located in Florida.

91.     Thus, Defendant violated Section 501.059(5) of the FTSA.

92.     Plaintiff and the Class members were harmed and aggrieved by Defendant's violations of the FTSA.

93.     Plaintiff and the members of the Class are entitled to injunctive relief to stop Defendant's ongoing and future violations of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(1).

94. Plaintiff and the Class are entitled to an award of liquidated damages of $500.00 for each unsolicited telephonic sales call that Defendant placed in violation of the FTSA. *See* Fla. Stat. § 501.059(10)(a)(2).

95. Because Defendant knew or should have known that they were initiating telephonic sales calls to consumers who has previously communicated that they do not wish to receive them, Defendant's violations of the FTSA were willful or knowing.

96. Thus, Plaintiff and the Class are entitled to an award of liquidated damages of $1,500 for each unsolicited telephonic sales call that Defendant placed in knowing or willful violation of the FTSA. Fla. Stat. § 501.059(10)(b).

97. Under Fla. Stat. § 501.059(11)(a), Plaintiff and the Class are entitled to an award of reasonable attorneys' fees and costs to be paid by the Defendant.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for the following relief:

i. An order certifying the Class, appointing Plaintiff as Class Representative, and Plaintiff's counsel as Class Counsel;

ii. An award to Plaintiff and each Class member of actual damages;

iii. An award to Plaintiff and each Class member of statutory damages of $500 per violation of the TCPA, trebled to $1,500 for knowing or willful violations;

15

iv.    An award to Plaintiff and each Class member of liquidated damages of $500 per violation of the FTSA, trebled to $1,500 for knowing or willful violations;

v.    An injunction prohibiting Defendant from further violations of the TCPA and the FTSA;

vi.    An award to Plaintiff and the Class of their reasonable attorney's fees as available under the law;

vii.    An award to Plaintiff and the Class of their costs of this action as available under the law;

viii.    An award to Plaintiff and the Class of post-judgment interest as available under the law; and

ix.    Any such further and other relief as the Court deems just and equitable.

### Demand for Jury Trial

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all triable issues.

Date:  May 1, 2026

Respectfully submitted,

*/s/ Avi R. Kaufman*
Avi R. Kaufman (FL Bar No. 84382)
**KAUFMAN PA**
237 South Dixie Highway, Flr 4
Coral Gables, FL 33133
Telephone: (305) 469-5881
kaufman@kaufmanpa.com

*Counsel for Plaintiff and the Proposed Classes*

17

## **CERTIFICATE OF SERVICE**

I, Avi Kaufman, hereby certify that on May 1, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

*/s/ Avi R. Kaufman*
Avi R. Kaufman